**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASON CHESTERMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>FUNDWELL, INC.,<br><br>Defendant. | Case Number:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Jason Chesterman ("Plaintiff"), individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "Complaint") against defendant Fundwell, Inc. ("Defendant"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1. Plaintiff brings this Complaint against Defendant to stop Defendant from violating the Telephone Consumer Protection Act, 47 U.S.C §§ 227, *et seq*. ("TCPA") and invading the privacy of Plaintiff and the putative class by making unsolicited telemarketing calls using a pre-recorded and/or artificial voice without their consent in violation of the TCPA as well as its related regulations under the National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).

2. Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's unlawful conduct.

3. Defendant made several unauthorized telephone calls to Plaintiff's cellular telephone using an artificial and/or pre-recorded voice for the purpose of soliciting business from Plaintiff.

4. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

5. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited artificial and prerecorded voice phone calls as well as an award of statutory damages to the members of the Classes (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

6. Plaintiff is a New Jersey citizen and currently resides in Essex County. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

7. Upon information and belief, Defendant is a foreign corporation with its principal place of business located at One Liberty Plaza, New York, New York. At all times relevant to the Complaint, Defendant conducted business in the State of New Jersey and within this District.

8. At all times mentioned herein, Defendant is a "person" as defined by 47 U.S.C. § 153(39).

9. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction as this action arises under the TCPA, a federal statute.

11. Because Defendant conducts significant business in this District and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District, this Court has personal jurisdiction over Defendant.

12. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because the wrongful conduct giving rise to this case occurred in and was directed to this District.

## LEGAL BASIS FOR THE CLAIMS

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

14. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." *Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

15. The TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment.

16. Specifically, the TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.

18. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.

19. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

20. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

21. As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit certain calls to members of the National Do Not Call Registry.

22. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565,

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

23. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

24. With respect to misdialed or wrong-number calls, the FCC clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

25. The TCPA also established the National Do-Not-Call Registry, as well as the requirement that all businesses that place calls for marketing purposes maintain an "Internal" Do-Not-Call list ("IDNC list").

26. The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."

27. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. Id. at§ 64.1200(d)(3), (6).

28. Individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct.

29. Under general tort principals, corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.

## FACTUAL ALLEGATIONS

30. Defendant provides funding to small businesses.

31. In Defendant's overzealous attempt to market its services, however, Defendant knowingly and willfully made (and continues to make) unsolicited telemarketing phone calls utilizing an artificial or pre-recorded message without the prior express written consent of the call recipients.

32. Through its methods, Defendant has invaded the personal privacy of Plaintiff and members of the Classes defined below.

33. Upon information and belief, Defendant has intentionally and repeatedly violated the TCPA, and will continue to do so in violation of Plaintiff's and the Class members rights absent judicial relief and legal redress.

**FACTUAL ALLEGATIONS AS TO PLAINTIFF**

34. At all times relevant to this Complaint, Plaintiff was assigned, and was the owner of, a cellular telephone number ending in - 6867 ("Cell Phone").

35. Plaintiff, *himself*, registered his Cell Phone with the National Do Not Call Registry on March 10, 2009.

36. Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

37. Plaintiff's Cell is used solely for residential purposes.

38. Plaintiff does not use his Cell for any type of business purpose.

39. Plaintiff does not use his Cell for business transactions.

40. Plaintiff does not use his Cell for his employment.

41. Plaintiff's employer does not pay Plaintiff's phone bill.

42. Plaintiff's employer does not reimburse Plaintiff for his phone bill.

43. At no time prior to Defendant first initiating its call to Plaintiff did Plaintiff provide Plaintiff's Cell Phone to Defendant through any medium.

44. At no time did Plaintiff ever form or enter into any type of business relationship with Defendant.

45. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted for marketing purposes.

46. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted by Defendant on his Cell Phone via an artificial voice or pre-recorded message.

47. Despite its obligations under the TCPA, Defendant placed numerous unlawful solicitation calls Plaintiff on his Cell Phone in March 2026 through the present.

48. For example, Plaintiff received an unsolicited telemarketing call to his Cell Phone from the phone number, 646-568-7802, with a pre-recorded message, as defined by 47 U.S.C. § 227(a)(1).

49. The pre-recorded message expressly identified the Defendant.

50. In addition to this call, Plaintiff received multiple unsolicited telemarketing calls to his Cell Phone from phone numbers (908) 409-9330, (862) 872-7771, (908) 373-0046, (551) 205-8329 and (862) 895-6813.

51. Due to the cadence and tone of the pre-recorded message, Plaintiff was able to discern that, at the outset of the call, there was not a live representative on the line and that Defendant was utilizing a pre-recorded message.

52. Upon information and belief, and based on the circumstances as described above, Defendant called Plaintiff using a pre-recorded message as prohibited by 47 U.S.C. § 227(b)(1).

53. When Plaintiff heard Defendant's message at the outset of the call, Plaintiff was able to determine that it was a pre-recorded message and that he was not speaking to a live person. *See, Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

54. It was evident to Plaintiff that the voice message he heard was pre-recorded because, *inter alia*: (a) the generic content of the voice message; and (b) the tone, cadence and inflection of the voice message, which sounded to the Plaintiff's ears like a pre-recorded message, rather than a personal voice message that was placed personally for the Plaintiff by a live human being on the line.

55. Plaintiff has previously received both pre-recorded voice messages and regular non-prerecorded voice messages, and can differentiate the characteristics and sounds of a pre-recorded voice message in contrast to an ordinary voice message.

56. Based on the Plaintiff's own personal experience, the voice message received from Defendant clearly sounded like a pre-recorded voice message.

57. After receiving these various calls, Plaintiff finally spoke with a representative named Tracey Mills ("Mills").

58. Although Plaintiff did not express any interest in Defendant's services or a willingness to receive additional calls and/or telemarketing, Mills continued to inundate Plaintiff with calls as well as text messages.

59. Specifically, the text message offered Plaintiff the ability to apply for "Business working Capital of 25k" and provided the following hyperlink https://apply.fundwell.com/tracey.m.

60. In addition to patently violating 47 U.S.C. § 227(b), Defendant further violated the TCPA's National Do-Not-Call regulations.

61. Pursuant to 47 U.S.C. § 227(c)(3)(F), Defendant is required to check the National Do Not Call Registry before attempting to transmit a telephone solicitation to the telephone number of any subscriber included in the National Do Not Call Registry.

62. Defendant's telephone calls and text messages constituted telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

63. Through the above-described repeated unsolicited and unwanted telemarketing calls, Defendant repeatedly invaded Plaintiff's privacy and violated Plaintiff's rights under the TCPA.

**Other Consumer Complaints About Defendant's Unlawful Telemarketing**

64. Like Plaintiff, many other consumers have suffered the same invasive and harassing telemarketing at the hands of Defendant.

65. For instance, on April 4, 2026, a consumer named Haley posted the following review on the digital, open-access review platform Trustpilot:

> I continually receive phone calls from your company for solicitation. I have blocked your number on my phone multiple times. When I block a number you call from another number. Sometimes I get multiple calls on the same day. I have not requested nor need your product. And I would never use a company that continually spoofs phone numbers to try to gain business.[2]

66. Similarly, on March 31, 2026, a consumer named Jennifer posted:

> This organization calls my business phone dozens of times of week. Sometimes more than 5 times per day. We have told them that we are NOT interested and to stop calling. It has continued for months. It is beyond harassment [SIC]. We have never done business with them and would NEVER do business with them.[3]

67. Also, on March 6, 2026, a consumer named Etay Blumenfeld posted:

> Calling me almost every day for about a month now although I asked to stop calling me every single time. Watch out from this scammers.[4]

68. Based on the foregoing, Plaintiff has reason to believe that Defendant has called thousands of wireless telephone customers with pre-recorded messages to market its products and services without prior express written consent.

---

[2] https://www.trustpilot.com/review/fundwell.com?stars=1

[3] *Id.*

[4] *Id.*

## LEGAL CLAIMS

69. Defendant's unsolicited telemarketing calls to Plaintiff's Cell Phone were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

70. Plaintiff did not request or provide Defendant "prior express written consent" to receive telemarketing calls to his Cell Phone utilizing a pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

71. Plaintiff also did not provide regular "prior express consent" to receive any prerecorded calls from Defendant.

72. The unwanted telephone calls Defendant made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

73. Upon information and belief, Defendant did not make the telephone solicitations to Plaintiff's Cell Phone and other similarly situated persons in error, nor were such telephone communications made for emergency purposes.

74. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephonic solicitations to Plaintiff and other similarly situated persons in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including 47 C.F.R. § 64.1200(c).

75. Upon information and belief, Defendant and/or a third party acting on Defendant's behalf, and for Defendant's benefit, made the above-described and

substantially similar unlawful telephone solicitations to thousands of telephone numbers nationwide that were registered on the National Do Not Call Registry.

76. Plaintiff properly alleges injuries in fact, which are fairly traceable to Defendant's unlawful acts, and are likely to be redressed by a favorable judicial decision.

77. Among other harms caused by the unlawful calls at issue, receiving the unwanted phone calls resembles the kind of harm associated with invasion of privacy and intrusion upon seclusion.

78. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and the Class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. §§ 227, *et seq.*, which prohibits certain unsolicited voice calls to cellular phones.

79. On behalf of Plaintiff and the Class, Plaintiff seeks an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees for the unlawful calls.

## CLASS ACTION ALLEGATIONS

80. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Classes:

TCPA Class

> All persons within the United States (1) who received any solicitation/telemarketing phone calls from or on behalf of Defendant (2) to said person's cellular telephone (3) made through the use of a prerecorded voice call (4) without such person's prior express consent to receiving such calls (5) within the four years prior to the filing of this Complaint.

DNC Class

> All persons within the United States (1) registered on the National Do Not Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

81. Plaintiff reserves the right to modify the definition of the Class(es) as warranted as facts are learned in further investigation and discovery.

82. Plaintiff and the members of the Classes were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Classes *via* their cellular telephones using an artificial and/or pre-recorded voice, thereby causing annoyance to Plaintiff and the Classes and also invading the privacy of Plaintiff and Classes.

83. Plaintiff does not know the number of members in the Classes, but believes the members of the Classes number in the thousands, if not more. Thus, the members of the Classes are so numerous that joinder of all of them is impracticable, and this matter should be certified as a class action to assist in the expeditious litigation of this matter.

84. The members of the Classes are ascertainable because the Classes are defined by objective criteria and the Class members can be identified through Defendant's records or Defendant's agents' records and the National Do Not Call Registry.

85. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

86. Common questions for the Classes include, without limitation:

a. Whether Defendant's conduct violated the TCPA;

b. Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct;

c. Whether Defendant made phone calls to consumers using a pre-recorded voice to any telephone number assigned to a cellular phone service;

d. Whether Defendant made phone calls to consumers registered on the National Do Not Call Registry; and

e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

87. As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Classes.

88. Plaintiff and the Classes suffered irreparable harm and invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA, and suffered damages as a result of the Defendant's uniform unlawful and wrongful conduct.

89. Absent a class action, the Classes will continue to be damaged and face irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

90. Plaintiff will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions.

91. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

92. This class action is appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making final injunctive relief appropriate with respect to the Class as a whole.

93. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

94. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

95. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

96. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

97. Even if members of the Class could sustain such individual litigation, a class action would still be preferable because individual litigation would increase

the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

98. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST COUNT
## VIOLATIONS OF 47 U.S.C. §§ 227(B), *ET SEQ.*

99. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

100. Defendant made unsolicited and unauthorized phone calls using an artificial or pre-recorded voice to the cellular telephones of Plaintiff and the TCPA Class members for the purpose of marketing products and/or services to Plaintiff and the TCPA Class.

101. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 (b).

102. Defendant made unsolicited and unauthorized calls to Plaintiff and TCPA Class members for the purpose of marketing products and/or services to those Plaintiff and the TCPA Class.

103. Defendant's conduct invaded Plaintiff's privacy.

104. As a result of Defendant's violations of 47 U.S.C. §§ 227 (b), Plaintiff and the TCPA Class are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

105. Plaintiff and TCPA Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

106. Plaintiff and the TCPA Class are also entitled to and seek injunctive relief prohibiting such conduct in the future

107. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**SECOND COUNT**
**VIOLATIONS OF 47 U.S.C. §§ 227 (C) *ET SEQ.***

108. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

109. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA's implementing regulation 47 C.F.R. § 64.1200(c).

110. As a result of Defendant's negligent violations of 47 U.S.C. § 227 (c), Plaintiff and each member of the DNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

111. Plaintiff and each member of the DNC Class are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violations of 47 U.S.C. §§ 227 (c), pursuant to 47 U.S.C. § 227(c)(5).

112. Plaintiff and the DNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## JURY DEMAND

Plaintiff and the Class demand a jury trial on all issues so triable.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully request the following relief:

a. An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Classes and any subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Classes, and

b. appointing the law firm representing Plaintiff as Class Counsel;

c. An Order declaring Defendant's conduct, as alleged above, was in violation of the TCPA, 47 U.S.C. § 227(b);

d. An Order declaring Defendant's conduct, as alleged above, was in violation of the TCPA, 47 U.S.C. § 227(c);

e. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an Order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

f. An award of statutory damages;

g. An award of treble damages;

h. An award of reasonable attorneys' fees and costs; and

i. Such other and further relief that the Court deems reasonable and just.

Dated: New York, New York
April 14, 2026

**KAZEROUNI LAW GROUP, A.P.C.**

By: ______________________

Ross H. Schmierer, Esq.
48 Wall Street, Suite 1100
New York, NY 10005
Phone: (800) 400-6808
Fax: (800) 520-5523
ross@kazlg.com

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: April 14, 2026

**KAZEROUNI LAW GROUP, APC**

By: */s/ Ross H. Schmierer*
Ross Schmierer, Esq.